UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

VALERIE JEAN WALTON,

                         Plaintiff,

v.                                                    6:18-CV-6140
                                                      (WBC)

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
_____

APPEARANCES:                                OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC         JUSTIN GOLDSTEIN, ESQ.
  Counsel for Plaintiff                     KENNETH HILLER, ESQ.
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                 ANNE ZEIGLER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II    FRANCES TANKARD, ESQ.
  Counsel for Defendant                     VERNON NORWOOD, ESQ.
26 Federal Plaza – Room 3904                KATHRYN SMITH, ESQ.
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented, in accordance with a Standing Order, to proceed before

the undersigned.  (Dkt. No. 18.)  The court has jurisdiction over this matter pursuant to

42 U.S.C. § 405(g).  The matter is presently before the court on the parties' cross-

motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of

Civil Procedure.  For the reasons discussed below, Plaintiff's motion is denied, and the

Commissioner's motion is granted.

## I.      RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1965.  (T. 81.)  She completed some college.  (T. 202.)

Generally, Plaintiff's alleged disability consists of narcolepsy, obstructive sleep apnea,

anxiety, cervical spondylitic arthritis with degenerative discs, chronic headaches, carpal

tunnel syndrome, and depression.  (T. 201.)  Her alleged disability onset date is April 3,

2014.  (T. 81.)  Her date last insured is December 31, 2019.  (*Id*.)  Her past relevant

work consists of nurse instructor, private duty nurse, nurse supervisor, utilization

management quality assistant, director of nursing serves and case manager.  (T. 26,

202.)

### B.    Procedural History

On April 24, 2014, Plaintiff applied for Disability Insurance Benefits ("SSD") under

Title II of the Social Security Act.  (T. 81.)  Plaintiff's application was initially denied, after

which he timely requested a hearing before an Administrative Law Judge ("the ALJ").

On April 10, 2017, Plaintiff appeared before the ALJ, Gretchen Mary Greisler.  (T. 33-

71.)  On August 2, 2017, ALJ Greisler issued a written decision finding Plaintiff not

disabled under the Social Security Act.  (T. 12-32.)  On December 20, 2017, the AC

denied Plaintiff's request for review, rendering the ALJ's decision the final decision of

the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this

Court.

### C.    The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and

conclusions of law.  (T. 17-27.)  First, the ALJ found Plaintiff met the insured status

requirements through December 31, 2019 and Plaintiff had not engaged in substantial

gainful activity since April 3, 2014.  (T. 17.)  Second, the ALJ found Plaintiff had the

severe impairments of: narcolepsy without cataplexy, partial lipodystrophy/Kobberling

Dunnigan version, bilateral carpal tunnel with median and ulnar neuropathy,

degenerative disc disease, right shoulder bursitis/arthritis, anxiety and depression.  (*Id*.)

Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals

one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T.

18.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to

perform light work as defined in 20 C.F.R. § 404.1567(b), specifically:

> she can occasionally stoop, bend, kneel, crouch, crawl and climb ramps and
> stairs, but never can climb ladders, ropes or scaffolds.  She frequently can
> reach in all directions and can use her arms and hands to grasp, hold
> and turn objects, but can only occasionally handle, finger and feel.  She cannot
> work at unprotected heights or in proximity to dangerous moving machinery.
> She can understand, remember and carry out simple instructions, respond
> appropriately to supervision, coworkers and usual situations and deal with
> changes in a routine work setting.

(T. 20.)  Fifth, the ALJ determined Plaintiff was unable to perform past relevant work;

however, there were jobs that existed in significant numbers in the national economy

Plaintiff could perform.  (T. 26.)

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff makes two separate arguments in support of her motion for judgment on

the pleadings.  First, Plaintiff argues the ALJ's RFC assessment is unsupported by

substantial evidence and is inconsistent with the legal standards.  (Dkt. No. 12 at 14-

28.)  Second, and lastly, Plaintiff argues the ALJ failed to meet her burden at step five.

(*Id*. at 28-30.)  Plaintiff also filed a reply in which she reiterated her original arguments.

(Dkt. No. 16.)

3

**B.     Defendant's Arguments**

In response, Defendant makes two arguments.  First, Defendant argues substantial evidence supports the ALJ's evaluation of the medical opinion evidence and the ALJ's RFC finding.  (Dkt. No. 15 at 19-24.)  Second, and lastly, Defendant argues the ALJ properly applied the medical-vocational guidelines at step five and substantial evidence supports the ALJ's conclusion that Plaintiff could perform a significant number of jobs in the national economy.  (*Id*. at 24-28.)

**III.     RELEVANT LEGAL STANDARD**

**A.     Standard of Review**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v.*

*Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both

sides, because an analysis of the substantiality of the evidence must also include that

which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be

sustained "even where substantial evidence may support the plaintiff's position and

despite that the court's independent analysis of the evidence may differ from the

[Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In

other words, this Court must afford the Commissioner's determination considerable

deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a *de novo* review."

*Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine

whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. §

404.1520.  The Supreme Court has recognized the validity of this sequential evaluation

process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The

five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment or combination of
> impairments; (3) whether the impairment meets or equals the severity of the
> specified impairments in the Listing of Impairments; (4) based on a 'residual

functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

### A.   Treating Physician Opinions

Plaintiff argues the ALJ failed to follow the treating physician rule and failed to provide good reasons in weighing the opinion evidence.  (Dkt. No. 12 at 14-24.)  Plaintiff argues the ALJ's rejection of opinions stating Plaintiff was unable to work triggered the ALJ's obligation to recontact the sources for a more detailed opinion; the ALJ failed to identify objective evidence inconsistent with opinions and provided only conclusory findings; the ALJ erred in concluding opined limitations were inconsistent with activities of daily living; the ALJ erred in rejecting opinion evidence because it was prepared for a different agency; and the ALJ relied on her own speculation in rejecting opined limitations.  (*Id*.)

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2)[1].  When assigning less than "controlling weight" to a treating physician's opinion, the ALJ must "explicitly consider" the four factors announced in *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008).  *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)

---

[1]      Effective March 27, 2017, many of the regulations cited herein have been amended, as have Social Security Rulings ("SSRs").  Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier regulations and SSRs.

(internal quotation marks omitted).  Those factors, referred to as "the *Burgess* factors," are "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist."  *Estrella,* 925 F.3d at 95-96 (citation omitted); 20 C.F.R. § 404.1527(c)(2).

A reviewing court should remand for failure to consider explicitly the *Burgess* factors unless a searching review of the record shows that the ALJ has provided "good reasons" for its weight assessment. *Estrella,* 925 F.3d at 96; *see Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019) ("While the ALJ here did not always explicitly consider the *Burgess* factors when assigning the treating physician' opinions less than controlling weight, we nonetheless conclude that the ALJ provided sufficient "good reasons" for the weight assigned.").

First, the ALJ was not obligated to recontact Plaintiff's treating sources.  In general, an ALJ's duty to recontact a treating source "arises only if the ALJ lacks sufficient evidence in the record to evaluate the doctor's findings, not when the treating physician's opinion is inconsistent with her own prior opinions and the rest of the record."  *Morris v. Berryhill*, 721 F. App'x. 25 (2d Cir. 2018); *see Janes v. Berryhill*, 710 F. App'x 33 (2d Cir. 2018) (ALJ not required to further develop record when the evidence already presented is adequate to make a determination).

In support of her argument that the ALJ was required to recontact sources who opined she was unable to work, Plaintiff relies on *Mecklenburg v. Astrue*, No. 07-CV-760, 2009 WL 4042939 (W.D.N.Y. Nov. 19, 2009).  The Court in *Mecklenburg* concluded, a doctor's opinion that a plaintiff was unable to work "triggered" the ALJ's

duty to seek further development of the record.  *Mecklenburg*, 2009 WL 4042939 at *7,

(citing *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004)).  Plaintiff's argument

fails.

      The holding in *Mecklenburg* relies on a 10th Circuit case which in turn relied on

20 C.F.R. § 404.1512(e)(1).  *Mecklenburg*, 2009 WL 4042939 at *7.  Effective March

26, 2012, the Commissioner amended 20 C.F.R. § 404.1512 (e)(1) to remove former

paragraph (e), together with the duty that it imposed on the ALJ to re-contact the

treating physician under certain circumstances.  *Lowry v. Astrue*, 474 F. App'x 801, 805

n.2 (2d Cir. 2012) (citing *How We Collect and Consider Evidence of Disability*, 77 Fed.

Reg. 10,651, 10,656 (Feb. 23, 2012) (to be codified at 20 C.F.R. § 416.912) (deleting

former paragraph (e) and redesignating former paragraph (f) as paragraph (e)).  Plaintiff

filed her application for benefits after the 2012 changes in the regulations.  Therefore,

the ALJ was not obligated to recontact treating sources for a more detailed narrative of

Plaintiff's functional abilities before rejecting the source's opinion Plaintiff was unable to

work.

      Second, the ALJ properly afforded none, or little weight, to the opinions

concerning Plaintiff's disability status.  (T. 23, 24.)  The ultimate finding of whether

Plaintiff was disabled and cannot work is "reserved to the Commissioner."  20 C.F.R. §

404.1527(d).  "That means that the Social Security Administration considers the data

that physicians provide but draws its own conclusions as to whether those data indicate

disability. A treating physician's statement that the claimant is disabled cannot itself be

determinative."  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).  Therefore, the ALJ did

not err in afforded none or little weight to the various statements in the record concerning Plaintiff's inability to work or disability status.

Overall, the ALJ properly assessed statements concerning Plaintiff's ultimate disability status and the rejection of such statement did not "trigger" the ALJ's duty to recontact the sources for further explanation.

Plaintiff argues the ALJ erred in rejecting Elif Oral, M.D's opinion based on the lack of specific functional limitations.  (Dkt. No. 12 at 17.)  On December 1, 2016, Dr. Oral composed a letter.  (T. 405-406.)  Dr. Oral outlined Plaintiff's diagnoses and stated her conditions caused "bouts of extreme fatigue, despite the use of a significant amount of amphetamines."  (T. 405.)  The doctor stated Plaintiff's impairments caused slurred speech, difficulty ambulating, difficulty thinking or organizing thoughts, chronic muscle tension, muscle pain and stiffness, muscle cramping and weakness, severe dizziness, and imbalance.  (*Id*.)  Dr. Oral stated Plaintiff's conditions limited her daily activities.  (*Id*.)  Dr. Oral opined Plaintiff was unable to work and her "disability is total and permanent."  (*Id*.)

Here, the ALJ properly afforded Dr. Oral's statement, that Plaintiff was unable to return to work and disabled, "no weight."  (T. 24.)  The ALJ also properly afforded the remainder of Dr. Oral's opinion "little weight."  (T. 25.)  The ALJ concluded the record did not contain treatment records from Dr. Oral, he referred Plaintiff to other providers, he failed to provide reference to any specific restrictions or symptoms, and he did not provide a function-by-function assessment.  (T. 24-25.)

As an initial matter, the record does not support the assertion that Dr. Oral was a treating source; therefore, he was not subject to the treating physician rule.  As noted by

the ALJ, although the record contains Dr. Oral's letter, the record does not contain treatment notations from him.   "[A] physician who only examined a claimant once or twice did not see that claimant regularly and did not develop a physician/patient relationship with the claimant …[and] such a physician's medical opinion was not entitled to the extra weight of a treating physician."  *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. Mar. 8, 2011) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983) (treating physician deserves deference based on continuity of treatment relationship)); *see Comins v. Astrue*, 374 F. App'x 147, 149 (2d Cir. Apr. 15, 2010) (physician who saw claimant once does not have ongoing treatment relationship based).  Second, as stated by the ALJ, Dr. Oral's statement did not contain functional limitations instead only referring to Plaintiff's limitations in vague terms.  Accordingly, the ALJ properly gave little weight to Dr. Oral's opinion.  (T. 25.)

Plaintiff argues the ALJ erred in her assessment of the November 2016 and March 2017 opinions of treating source, Anuj Bansal, M.D.  (Dkt. No. 12 at 17-18.)  In November 2016, Dr. Bansal completed a "Medical Examination for Employability" form ("employability form") for Ontario County Department of Social Services.  (T. 408-410.)  Therein he opined Plaintiff was "severely limited," defined as 1-2 hours, in her ability to: walk; stand; lift/carry; push, pull; bend/squat; use hands; and climb stairs.  (T. 409.)  Dr. Bansal opined Plaintiff was "able to without limitations," defined as more than four hours: sit, see, hear, and speak.  (*Id*.)

Regarding mental limitations, Dr. Bansal indicated Plaintiff had no limitations in her ability to: understand and remember simple instructions; maintain socially appropriate behavior; maintain basic standards of personal hygiene and grooming;

make simple decisions; and perform simple tasks.  (T. 409.)  He indicated Plaintiff was "able to with some limitations:" interact appropriately with others and use public transportation.  (*Id.*)  He opined she was "severely limited" in her ability to: understand and remember complex instructions and maintain attention and concentration.  (*Id.*) When asked if Plaintiff was physically and/or mentally able to maintain employment, Dr. Bansal checked "no."  (*Id.*)

The ALJ afforded Dr. Bansal's November 2016 employability form "little weight." (T. 24.)  The ALJ concluded Dr. Bansal failed to explain the basis for the limitations he imposed, and Plaintiff's activities involved greater exertion and activity than indicated in the report.  (*Id.*)  The ALJ further concluded the form was prepared for the Department of Social Services and involved rules that differ from those applicable to Social Security disability.  (*Id.*)

On March 21, 2017, Dr. Bansal completed a "Medical Source Statement" form. (T. 491-492.)  When asked how often during a workday Plaintiff's pain or other symptoms were severe enough to interfere with attention and concertation needed to perform simple tasks, Dr. Bansal checked "frequently," defined as 34% to 66% of an 8-hour workday.  (T. 491.)  Dr. Bansal indicated Plaintiff could "rarely" lift and carry up to 20 pounds and could never lift and carry 50 pounds.  (*Id.*)  He indicated Plaintiff could never climb ladders; rarely crouch/squat or climb stairs; occasionally stoop (bend); and occasionally and frequently twist.  (*Id.*)  When asked how long Plaintiff could sit and stand/walk total in an 8-hour workday, Dr. Bansal checked "less than 2 hours" for each activity.  (T. 492.)  He indicated Plaintiff could sit for two hours at a time and stand for ten minutes at a time.  (*Id.*)  When asked if pain significantly impaired Plaintiff's daily

functioning, he checked "yes."  (*Id*.)  When asked how many days per month Plaintiff was likely to be absent from work as a result of her impairments or treatment, Dr. Bansal checked "more than four days per month."  (*Id*.)

The ALJ afforded Dr. Bansal's March 2017 opinion "little weight."  (T. 25.)  The ALJ concluded there was "no basis" for the physical limitations based on diagnoses or clinical examinations.  (*Id*.)  The ALJ further reasoned the opined limitations were contradicted by Plaintiff's assertion she goes to the gym, cares for children, and "engages in a wide array of daily activities."  (*Id*.)

The ALJ properly considered Dr. Bansal's opinions and substantial evidence supported her determination to afford his opinions less than controlling weight.  (T. 24-25.)  The ALJ properly concluded the doctor's opinion provided on the employability form opinion utilized a different agency's guidelines and definitions.  The regulations explicitly provide the ALJ may consider "other factors," such as a medical source's familiarity with the record and his or her understanding of the SSA's disability program, when determining how much weight to provide a medical source's statement.  *Camille v. Berryhill*, No. 3:17-CV-01283, 2018 WL 3599736, at *9 (D. Conn. July 27, 2018); *see also* 20 C.F.R. § 404.1527(c)(6) ("[T]he amount of understanding of our disability programs and their evidentiary requirements that a medical source has, regardless of the source of that understanding, and the extent to which a medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.").

The ALJ also properly concluded Dr. Bansal's opined limitations were inconsistent with Plaintiff's daily activities.  As outlined by the Defendant, the ALJ further

explained that she gave Dr. Bansal's opinion little weight because Plaintiff's admitted activities involved greater exertion and activity than indicated in the report.  (T. 24, 408-409); *see Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112-13 (2d Cir. Mar. 25, 2010) (no error in crediting claimant's testimony about ability to lift 35 pounds over treating physician's limiting of claimant to lifting of ten pounds).  For instance, although Dr. Bansal indicated that Plaintiff was "severely limited" in her ability to walk, stand, bend/squat, and climb stairs, Plaintiff reported said she could tolerate standing pretty well, she did not usually have problems walking, and she could climb stairs and squat "ok."  (T. 214-215).

The ALJ properly afforded little weight to Dr. Bansal's March 2017 medical source statement.  (T. 25, 446-47.)  The ALJ found no basis for the physical limitations based on the diagnoses or clinical examinations.  (T. 25.)  Although Dr. Bansal indicated Plaintiff could walk zero city blocks and could only stand for 10 minutes at a time, his examination reports documented a normal gait and no focal deficits.  (T. 300, 303, 307, 312); *see Monroe v. Colvin*, 676 F. App'x 5, 7-8 (2d Cir. Jan. 18, 2017) (the ALJ properly discounted a medical source opinion based on, among other things, the inconsistency of that physician's opinion with his treatment notes).  Dr. Bansal also opined that Plaintiff would be unable to maintain attention and concentration needed to perform even simple work tasks due to her pain and other symptoms frequently (meaning 34% to 66% of the workday), but Dr. Bansal did not provide any basis for that opinion.  (T. 26, 446); *see* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion.").

Additionally, the ALJ found Dr. Bansal's assessment inconsistent with Plaintiff's assertions that she still goes to the gym, cares for children, and engages in a wide array of daily activities.  (T. 25.)  Plaintiff takes issue with the ALJ's description of her activities.  (Dkt. No. 12 at 19.)  While Plaintiff may not be able to squat 300 pounds as she reported to Chad Heartwole, M.D., she nevertheless testified that she still went to the gym when she could.  (T. 60, 411.)  Moreover, the ALJ did not determine that Plaintiff's activities equated to light work.  (T. 25.)  Here, the ALJ properly considered Plaintiff's reported activities to be inconsistent with the limitations assessed by Dr. Bansal.  (T. 25.)  Accordingly, the ALJ articulated good reasons for giving little weight to Dr. Bansal's two treating source opinions.

Overall, the ALJ properly assessed the opinions provided by Drs. Bansal and Oral.

**B.    Medical Expert Eric Puestow, M.D.**

Plaintiff argues it is "improper" for an ALJ to rely on a non-treating, non-examining medical source and credit his opinion over those of examining physicians. (Dkt. No. 12 at 24-30.)  To be sure, "generally" more weight is given "to the medical opinion of a source who has examined [Plaintiff] than to the medical opinion of a medical source who has not examined [Plaintiff.]"  20 C.F.R. § 404.1527(c)(1).

An ALJ may rely on the opinion of a non-examining medical source in formulating the RFC, because they such sources "are deemed to be qualified experts in the field of social security disability."  *Allen v. Comm'r of Soc. Sec.,* 351 F. Supp. 3d 327, 337 (W.D.N.Y. 2018); *see Anselm v. Comm'r of Soc. Sec.*, 737 F. App'x 552 (2d Cir. 2018) (the court determined it was within the ALJ's discretion to afford more weight to non-

examining medical consultant than treating source); *see also LaValley v. Colvin*, 672 F. App'x 129, 130 (2d Cir. 2017) (the court rejected plaintiff's contention that the ALJ gave too much weight to the opinion evidence of consultative examiners over the evidence produced by non-acceptable medical source)*; see Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (the regulations permit the opinions of non-examining sources to override the opinions of treating sources provided they are supported by the evidence in the record) (internal citation omitted); *see Botta v. Colvin*, 669 F. App'x 583, 584 (2d Cir. 2016) (ALJ properly relied on medical expert testimony in assessing claimant's functioning); *see Hancock v. Barnhart*, 308 F. App'x 520, 521 (2d Cir. 2009) (an ALJ is permitted to rely on other opinions, including medical expert, over treating source opinion); *see Eagan v. Comm'r of Soc. Sec.*, No. 1:18-CV-1428, 2020 WL 1853465, at *6 (W.D.N.Y. Apr. 13, 2020). Therefore, the ALJ did not commit legal error in affording more weight to non-examining medical examiner, Dr. Puestow, over an examining source.

Plaintiff further asserts Dr. Puestow's opinion was "poorly explained" and the doctor failed to cite evidence to support his findings. (Dkt. No. 12 at 25.) To be sure, Dr. Puestow's initial written interrogatories could have provided more detailed information; however, the ALJ sought clarification from Dr. Puestow and he responded with specific citations to the record. (T. 541-542.) The ALJ afforded Dr. Puestow's opinion, that Plaintiff could perform work at the light exertional level, great weight. (T. 25, 531-536.) The ALJ acknowledged the doctor never examined Plaintiff, however, Dr. Puestow reviewed the entire medical record. (T. 25.) Because Dr. Puestow provided additional information at the request of the ALJ, Plaintiff's argument, that the doctor's

opinion could not support the ALJ's RFC because it was poorly explained, is without merit.

Plaintiff also argues Dr. Puestow's opinion could not support the RFC because the doctor relied on the internally inconsistent opinion of the consultative examiner. (Dkt. No. 12 at 25.)  To be sure, consultative examiner Rita Figueroa, M.D., provided a medical source statement that was internally inconsistent.  (T. 394.)  Dr. Figueroa stated Plaintiff had "moderate" limitations in lifting and carrying and also stated Plaintiff had "no" limitations in lifting and carrying.  (*Id*.)  Although Dr. Puestow indicated he relied, in part, on Dr. Figueroa's examination and opinion in formulating his opinion, he ultimately relied on Plaintiff's record as a whole.  (T. 542.)  Because Dr. Puestow relied on the record as a whole his opinion was not flawed.

In addition, any error caused by Dr. Figueroa's internal inconsistency was harmless.  The ALJ afforded Dr. Figueroa's opinion partial weight.  (T. 23.)  The ALJ ultimately determined Plaintiff had limitations in lifting and carrying and the RFC limiting Plaintiff to lifting and carrying up to twenty pounds was consistent with Dr. Figueroa's more restrictive opinion Plaintiff had "moderate" limitations.  *See Grega v. Berryhill*, No. 17-CV-6596, 2019 WL 2610793, at *10 (W.D.N.Y. June 26, 2019) (light work not inconsistent with moderate exertional limitations); *see Burch v. Comm'r of Soc. Sec.*, No. 17-CV-1252, 2019 WL 922912, at *4 (W.D.N.Y. Feb. 26, 2019) (RFC for light work supported by moderate limitations for exertional activities and other substantial evidence in the record).

Therefore, the ALJ properly relied on the opinion of medical examiner Dr. Puestow and substantial evidence supported the ALJ's determination.

**C.      Step Five Determination**

Plaintiff argues the ALJ erred in applying the Medical-Vocational Guidelines at step five because the RFC determination contained postural, reaching, handling, fingering and feeling limitations and contained mental limitation which required the ALJ to consult a vocational expert ("VE").  (Dkt. No. 12 at 28-30.)

At step five in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy Plaintiff could perform.  *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983).  The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid").  *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986).

The Second Circuit has explained the ALJ may not solely rely on the Grids if a non-exertional limitation "has any more than a 'negligible' impact on a claimant's ability to perform the full range of work."  *Selian v. Astrue,* 708 F.3d 409, 421 (2d Cir.2013) (quoting *Zabala v. Astrue,* 595 F.3d 402, 411 (2d Cir.2010)).  A non-exertional impairment is non-negligible "when it ... so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity."  *Zabala,* 595 F.3d at 411. Whether VE testimony is required must be determined on a "case-by-case basis."  *Bapp* 802 F.2d at 605-606.  Further, "the mere existence of a non-exertional impairment does

not automatically require the production of a vocational expert nor preclude reliance on the [Grids]."  *Id.* at 603.

Here, the ALJ's RFC included postural limitations of occasional stooping, bending, kneeling, crouching, crawling, and climbing ramps and stairs, and no climbing ladders, ropes, or scaffolds.  (T. 20.)  Limitations to occasional stooping, bending, and crouching would not preclude the application of the Grids, because such limitations are consistent with light work.  *See* SSR 83-14 ("to perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch and would need to stoop only occasionally"; light work "implies that the worker is able to do occasional bending of the stooping type, i.e., for no more than one-third of the workday to bend the body downward and forward by bending the spine at the waist").

Further, limitations in kneeling and crawling do not preclude the application of the Grids.  *See* SSR 84-13 ("inability to crawl on hands and knees" has very little to no effect on the unskilled light occupational base); *see also* SSR 85-15 ("limitations on the ability to crawl would be of little significance in the broad world of work. This is also true of kneeling").  Similarly, a limitation to occasional climbing of ramps and stairs would not significantly affect the light occupational base.  *See* SSR 85-15 ("some limitation in climbing and balancing… would not ordinarily have a significant impact on the broad world of work.").  Finally, a limitation from climbing ladders, ropes, or scaffolds does not affect the broad work of light work because "relatively few jobs in the national economy require ascending or descending ladders and scaffolding."  SSR 83-14 ("the inability to ascend or descend scaffolding, poles, and ropes" has very little or no effect on the unskilled light occupational base).

As stated by Defendant, the ALJ's RFC finding did not include any manipulative limitations that would erode the occupational base of light work.  (T. 20.)  The ALJ determined Plaintiff could frequently reach in all directions and use her arms and hands to grasp, hold and turn objects, but could only occasionally handle, finger and feel.  (*Id*.) While a significant limitation in reaching may eliminate a large number of occupations a person could otherwise do, *see* SSR 85-15, the ALJ found that Plaintiff could frequently reach in all directions.  (T. 20.)  Further, the ALJ's manipulative limitations would not erode the occupational base of light work.  SSR 83-14.  Rather, light jobs "require gross use of the hands to grasp, hold, and turn objects."  *Id.*  Accordingly, the ALJ's manipulative limitations would not erode the occupational base for light work.

Lastly, the ALJ's RFC finding did not include any mental limitations that would erode the occupational base of light work.  (T. 20.)  The ALJ found Plaintiff could understand, remember, and carry out simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting.  (T. 20.)  As the ALJ discussed, the functions are the basic mental demands of unskilled work.  (T. 27); *see* SSR 85-15.  Therefore, Plaintiff had no limitation in the basic mental demands of work.  (T. 27); *see Woodmancy v. Colvin*, 577 F. App'x 72, 76 (2d Cir. Sept. 2, 2014) (affirming application of Grids where RFC limited claimant to "understand, carry out, and remember simple instructions[,]…respond appropriately to supervision, coworkers, and usual work situations and to deal with changes in a routine work setting"); *Lawler v. Astrue*, 512 F. App'x 108, 111-112 (2d Cir. Feb. 25, 2013) (ability to perform basic work activities consistent with unskilled work).

19

Therefore, the non-exertional limitations in the RFC had little effect on the occupational base of light work and the ALJ was not required to obtain VE testimony at step five.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:        July 13, 2020

William B. Mitchell Carter
U.S. Magistrate Judge